BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE BILL MORROW, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May a hospital district provide unconditional indemnification to non-employee members of its medical staff involved in litigation arising out of peer review committee activities?
 CONCLUSION
A hospital district may not provide unconditional indemnification to non — employee members of its medical staff involved in litigation arising out of peer review committee activities.
 ANALYSIS
The question presented for resolution concerns a proposed agreement under which a hospital district would agree to provide unconditional indemnification[1] to non — employee members of its medical staff who are defendants in litigation as a result of their activities as members of a hospital peer review committee. Typically, such a lawsuit would involve a staff physician suing committee members for defamation or for intentional interference with the right to practice a profession. (See Joel v. Valley Surgical Center (1998) 68 Cal.App.4th 360, 364.)[2] We conclude that a hospital district may not enter into such an agreement with its non-employee staff members.
A hospital peer review committee is a group of private physicians selected by and from the staff of the hospital.[3] It has responsibility for adopting rules governing hospital practices and procedures, evaluating physicians applying for staff privileges, establishing standards and procedures for patient care, assessing the performance of staff physicians, reviewing performed surgeries, and investigating complaints involving staff physicians. (See Fox v. Kramer (2002)22 Cal.4th 531, 538; Arnett v. Dal Cielo (1996) 14 Cal.4th 4, 10-12; People v. Superior Court (Memorial Medical Center) (1991)234 Cal.App.3d 363, 372-373.)
The Legislature has enacted two statutes granting immunity from liability for hospital peer review committee members. Civil Code section 43.7, subdivision (b) provides:
 "There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any professional society, any member of a duly appointed committee of a medical specialty society, or any member of a duly appointed committee of a state or local professional society, or duly appointed member of a committee of a professional staff of a licensed hospital (provided the professional staff operates pursuant to written bylaws that have been approved by the governing board of the hospital), for any act or proceeding undertaken or performed within the scope of the functions of the committee which is formed to maintain the professional standards of the society established by its bylaws, or any member of any peer review committee whose purpose is to review the quality of medical, dental, dietetic, chiropractic, optometric, acupuncture, or veterinary services rendered by physicians and surgeons, dentists, dental hygienists, podiatrists, registered dietitians, chiropractors, optometrists, acupuncturists, veterinarians, or psychologists which committee is composed chiefly of physicians and surgeons, dentists, dental hygienists, podiatrists, registered dietitians, chiropractors, optometrists, acupuncturists, veterinarians, or psychologists for any act or proceeding undertaken or performed in reviewing the quality of medical, dental, dietetic, chiropractic, optometric, acupuncture, or veterinary services rendered by physicians and surgeons, dentists, dental hygienists, podiatrists, registered dietitians, chiropractors, optometrists, acupuncturists, veterinarians, or psychologists or any member of the governing board of a hospital in reviewing the quality of medical services rendered by members of the staff if the professional society, committee, or board member acts without malice, has made a reasonable effort to obtain the facts of the matter as to which he, she, or it acts, and acts in reasonable belief that the action taken by him, her, or it is warranted by the facts known to him, her, or it after the reasonable effort to obtain facts. . . ."
Civil Code section 43.8 states:
 "In addition to the privilege afforded by Section 47, there shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any person on account of the communication of information in the possession of that person to any hospital, hospital medical staff, veterinary hospital staff, professional society, medical, dental, podiatric, or veterinary school, professional licensing board or division, committee or panel of a licensing board, the Senior Assistant Attorney General of the Health Quality Enforcement Section appointed under Section 12529 of the Government Code, peer review committee, quality assurance committees established in compliance with Sections 4070 and 5624 of the Welfare and Institutions Code, or underwriting committee described in Section 43.7 when the communication is intended to aid in the evaluation of the qualifications, fitness, character, or insurability of a practitioner of the healing or veterinary arts. . . ."[4]
In addition to these specific statutory immunities from liability for peer review committee members, may a hospital district provide members with unconditional indemnification? To answer that question, we look to the provisions of the Local Hospital District Law (Health Saf. Code, §§ 32000-32492; hereafter, "District Law"),[5] under which hospital districts establish, maintain, and operate health facilities within their territorial limits. (See §§ 32121, 32125; Talley v. Northern San Diego Hosp. Dist. (1953) 41 Cal.2d 33, 40; 87 Ops.Cal.Atty.Gen. 92, 92, fn. 1 (2004); 75 Ops.Cal.Atty.Gen. 20, 21-22 (1992); 67 Ops.Cal.Atty.Gen. 492, 492-493 (1984); 66 Ops.Cal.Atty.Gen. 13, 13-14 (1983); 55 Ops.Cal.Atty.Gen. 375, 376 (1972).)
A hospital district has been described for various purposes as a "district," "public corporation," and a "public agency of the state." (Talley v. Northern San Diego Hosp. Dist. supra, 41 Cal.2d at pp. 38-39; 66 Ops.Cal.Atty.Gen., supra, at p. 14; 58 Ops.Cal.Atty.Gen. 323, 324 (1975); 55 Ops.Cal.Atty.Gen., supra, at pp. 375-376.) While the grant of powers to a hospital district is broad (75 Ops.Cal.Atty.Gen., supra, at p. 21; 67 Ops.Cal.Atty.Gen., supra, at p. 493; 30 Ops.Cal.Atty.Gen. 351, 353 (1957)), Government Code section 56037 states that a hospital district is a "district of limited powers." (Cf. Turlock Irrigation Dist. v. Hetrick (1999) 71 Cal.App.4th 948, 953.)
A hospital district is permitted to exercise those powers and to do those things that are expressly authorized in the District Law or which are necessarily implied (§ 32001), and it may do "any and all other acts and things necessary to carry out [the District Law]" (§ 32121, subd. (k)). Its implied powers "are those essential to the limited declared powers provided by its enabling act." (See Water Quality Ass'n v. County of Santa Barbara (1996) 44 Cal.App.4th 732, 746.)
While a hospital district may generally enter into contracts (75 Ops.Cal.Atty.Gen., supra, at p. 21; 67 Ops.Cal.Atty.Gen., supra, at p. 492; 24 Ops.Cal.Atty.Gen. 53 (1954)), the subject matter of any particular contract must come within the scope of the district's authority to act. (County of Alameda v. Ross (1939)32 Cal.App.2d 135, 146; 67 Ops.Cal.Atty.Gen., supra, at p. 493.) Indemnification agreements are not among the specified categories under which a hospital district may contract. (See, e.g., § 32121, subd. (q).) Would entering into an unconditional indemnification agreement constitute a "necessarily implied" power of a hospital district or one that is "necessary" to carry out the District Law's provisions? For several reasons, we believe that a hospital district lacks the authority to execute the immunity agreements in question.
First, if the indemnification is truly unconditional and therefore allows indemnification for punitive damage awards, it is invalid to that extent. California public policy bars indemnification against punitive damage awards. (Ins. Code, §533; Civ. Code, § 1668; J. B. Aguerre, Inc. v. American Guarantee and Liability Ins. Co. (1997) 59 Cal.App.4th 6, 14; but see Shell Oil Co. v. Winterthur Swiss Ins. Co. (1993) 12 Cal.App.4th 715,739-742.)
We reject the suggestion that a hospital district may execute unconditional indemnification agreements because the District Law allows "incentives" to be offered to physicians. Subdivision (a) of section 32121.3 provides:
 "Notwithstanding any other provision of law, a hospital district, or any affiliated nonprofit corporation upon a finding by the board of directors of the district that it will be in the best interests of the public health of the communities served by the district and in order to obtain a licensed physician and surgeon to practice in the communities served by the district, may do any of the following: (1) Guarantee to a physician and surgeon a minimum income for a period of no more than three years from the opening of the physician and surgeon's practice. (2) Guarantee purchases of necessary equipment by the physician and surgeon. (3) Provide reduced rental rates of office space in any building owned or leased by the district or any of its affiliated entities, or subsidize rental payments for office space in any other buildings, for a term of no more than three years. (4) Provide other incentives to a physician and surgeon in exchange for consideration and upon terms and conditions the hospital district's board of directors deems reasonable and appropriate."
All of the inducements described in section 32121.3 are intended to attract qualified physicians to practice in the community. They do not extend to further activities that a hospital district would wish to obtain from physicians already in the community. Providing indemnification against litigation awards arising out of peer review committee activities would not meet the Legislature's stated intent for adding section 32121.3, as described in subdivision (e) of the statute:
 "The Legislature finds that this section is necessary to assist district hospitals to attract qualified physicians and surgeons to practice in the communities served by these hospitals, and that the health and welfare of the residents in these communities require these provisions."
In contrast to the provisions of the District Law, we note that the Legislature has specifically authorized indemnification for persons who assist the Medical Board of California in evaluating the conduct of an applicant or licensee. Business and Professions Code section 2317 provides:
 "If a person, not a regular employee of the board, is hired, under contract, or retained under any other arrangement, paid or unpaid, to provide expertise or nonexpert testimony to the Medical Board of California or to the California Board of Podiatric Medicine, including, but not limited to, the evaluation of the conduct of an applicant or a licensee, and that person is named as a defendant in an action for defamation, malicious prosecution, or any other civil cause of action directly resulting from opinions rendered, statements made, or testimony given to, or on behalf of, the division or committee or its representatives, the board shall provide for representation required to defend the defendant in that civil action. The board shall be liable for any judgment rendered against that person, except that the board shall not be liable for any punitive damages award. If the plaintiff prevails in a claim for punitive damages, the defendant shall be liable to the board for the full costs incurred in providing representation to the defendant. The Attorney General shall be utilized in those actions as provided in Section 2020."
If the Legislature had intended in the District Law to allow hospital districts to provide indemnification for peer review committee members, Business and Professions Code section 2317
demonstrates that the Legislature knew how to so authorize.
To be sure, a hospital district has been granted general authority to do what is "necessary." Section 32121 grants authority to a hospital district as follows:
 "Each local district shall have and may exercise the following powers:
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(k) To do any and all other acts and things necessary to carry out this division.
" . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
While a peer review committee serves a critical hospital function (People v. Superior Court (Memorial Medical Center) 234 Cal.App.3d at p. 372) and is essential to preserving the highest standards of medical practice (Bus. Prof. Code, § 809, subd. (a)(3)), the use of unconditional indemnification to encourage peer review participation does not appear "necessary" to carry out the provisions of the District Law. The medical staff's right of self — governance includes the ability to retain and be represented by independent legal counsel at the expense of the medical staff. (Bus. Prof. Code, § 2282.5, subd. (a)(5).) As previously noted, protection from liability is provided for peer review committee members by Civil Code sections 43.7 and 43.8, together with Evidence Code section 1157. The latter statute states:
 "(a) Neither the proceedings nor the records of organized committees of medical, medical-dental, podiatric, registered dietitian, psychological, marriage and family therapist, licensed clinical social worker, or veterinary staffs in hospitals, or of a peer review body, as defined in Section 805 of the Business and Professions Code, having the responsibility of evaluation and improvement of the quality of care rendered in the hospital, or for that peer review body, or medical or dental review or dental hygienist review or chiropractic review or podiatric review or registered dietitian review or veterinary review or acupuncturist review committees of local medical, dental, dental hygienist, podiatric, dietetic, veterinary, acupuncture, or chiropractic societies, marriage and family therapist, licensed clinical social worker, or psychological review committees of state or local marriage and family therapist, state or local licensed clinical social worker, or state or local psychological associations or societies having the responsibility of evaluation and improvement of the quality of care, shall be subject to discovery.
 "(b) Except as hereinafter provided, no person in attendance at a meeting of any of those committees shall be required to testify as to what transpired at that meeting.
 "(c) The prohibition relating to discovery or testimony does not apply to the statements made by any person in attendance at a meeting of any of those committees who is a party to an action or proceeding the subject matter of which was reviewed at that meeting, or to any person requesting hospital staff privileges, or in any action against an insurance carrier alleging bad faith by the carrier in refusing to accept a settlement offer within the policy limits.
 "(d) The prohibitions in this section do not apply to medical, dental, dental hygienist, podiatric, dietetic, psychological, marriage and family therapist, licensed clinical social worker, veterinary, acupuncture, or chiropractic society committees that exceed 10 percent of the membership of the society, nor to any of those committees if any person serves upon the committee when his or her own conduct or practice is being reviewed.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
If the members of a peer review committee adhere to applicable due process procedures (Bus. Prof. Code, §§ 809.1-809.6; Health Saf. Code, § 32150; see Unnamed Physician v. Board of Trustees of Saint Agnes Medical Center (2001) 93 Cal.App.4th 607, 616-617) and apply them in good faith, they are protected by the provisions of Civil Code sections 43.7 and 43.8. In light of these statutory protections, we do not view unconditional indemnification as reasonably "necessary" for purposes of section 32121.[6]
Finally, we do not agree with the suggestion that Government Code section 31000, by way of analogy, would allow a hospital district to provide unconditional indemnification to peer review committee members. This statute states:
 "The board of supervisors may contract for special services on behalf of the following public entitles: the county, any county officer or department, or any district or court in the county. Such contracts shall be with persons specially trained, experienced, expert and competent to perform the special services. The special services shall consist of services, advice, education or training for such public entities or the employees thereof. The special services shall be in financial, economic, accounting (including the preparation and issuance of payroll checks or warrants), engineering, legal, medical, therapeutic, administrative, architectural, airport or building security matters, laundry services or linen services. . . . The board may pay from any available funds such compensation as it deems proper for these special services. . . ."
In 60 Ops.Cal.Atty.Gen. 59 (1977), we concluded that a county could indemnify or provide medical malpractice insurance coverage for physicians who contract to perform medical services for the county under this statute. (Id. at pp. 60-61.) Although participation in the peer review process may be likened to a "special medical service," Government Code section 31000 authorizes counties, not hospital districts, to contract for these services. Additionally, in our 1977 opinion, the county provided indemnification insurance coverage for physicians in order to retain continued medical treatment for county patients, and the indemnification was limited to a stated maximum amount of contingent liability. (Ibid.) Here, on the other hand, the proposed indemnification would be unconditional and without a maximum limit.
We therefore conclude that a hospital district may not provide unconditional indemnification to non-employee members of its medical staff involved in litigation arising out of peer review committee activities.
[1] The indemnity obligation referred to here is the type which "arise[s] by virtue of express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances." (E. L. White, Inc. v. City of Huntington Beach (1978) 21 Cal.3d 497, 506; see also Civ. Code, §2772 ["Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person"].) The indemnity would be "unconditional" in the sense that it would not be restricted either in amount or with regard to the basis of the claim.
[2] The litigation would not involve a medical malpractice complaint by a patient against a committee member, nor would the claim be typically covered by a physician's professional liability insurance policy.
[3] Due to the requirements of the Medical Practice Act, hospital districts may not have physician employees. Instead, they are authorized to contract with physicians who perform their services as independent contractors. (Conrad v. Medical Bd. of California (1996) 48 Cal.App.4th 1038, 1041.) The differences between an employee and an independent contractor have been described as follows:
 "The principal test of an employment relationship is whether the employer has the right to control the manner and means of accomplishing the result desired. [Citation.] An independent contractor relationship exits where control may be exercised only as to the result of the work and not the means by which it is accomplished." (Id. at p. 1053, fn. 3.)
[4] Civil Code section 47 provides immunity from liability for communications made in specified proceedings. No immunity is granted under Civil Code section 43.8 if "the communicator knew the information was false or otherwise lacked a good faith intent to aid in the evaluation of the practitioner." (Hassan v. Mercy American River Hospital (2003) 31 Cal.4th 709, 720.)
[5] Hereafter, references to the Health and Safety Code are by section number only.
[6] Conceivably, the use of unconditional indemnification could cause a peer review committee member to act in such an unrestrained way that the peer review process would not be "fairly conducted," as intended by the Legislature (Bus. Prof. Code, § 809, subd. (a)(5)).